UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| MARVIN EDWARD LONG | ) |
|---|---|
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 3:16-CV-846-PPS-MGG ) |
| JASON RAY, | ) ) |
| Defendant. | ) |

## **OPINION AND ORDER**

Officer Jason Ray seeks summary judgment on a Section 1983 claim brought against him by Marvin Long relating to Officer Ray's deployment of his K-9 partner in the arrest of Mr. Long. Officer Ray says he should get summary judgment because the level of force used in connection with Long's arrest was objectively reasonable under the circumstances and that he is entitled to qualified immunity in any event. The problem for Officer Ray is that there are disputed issues of material fact that preclude judgment at this time. So I will deny his motion.

### **Background**

While some key factual matters are hotly disputed, most of the basic facts of this case are relatively straightforward and undisputed by the parties.

Late in the evening on October 20, 2016, the Elkhart County Sheriff's Department was advised by their counterparts in Cass County, Michigan that they were in pursuit of a vehicle which had fled the scene of a burglary in Michigan and was entering

Indiana. [DE 55-1.] The suspect crossed the state line, fled his vehicle shortly thereafter and entered a cornfield. The sheriffs' departments set up a perimeter and requested the assistance of a K-9 unit to help locate the suspect. [*Id.*] Officer Jason Ray and his K-9 partner Zayne of the Elkhart Police Department arrived on the scene shortly thereafter. All of the law enforcement involved then began to conduct a search of the cornfield. They first located a woman named Maranda Barnett-Reed, who admitted to being a passenger in the vehicle that the Cass County Sheriff's Department had been pursuing. She advised them approximately where the driver had fled within the cornfield. The search continued and shortly thereafter, Zayne, Officer Ray and other law enforcement officers found Long amongst the corn stalks. When they came upon him, Long was lying on his stomach in the dirt. [*Id.*]

At this point, the stories diverge. On the one hand, according to Officer Ray, he gave orders to Long to show his hands but Long disobeyed, necessitating the use of force. Officer Ray chronicled his version of the events in a "K9 Deployment Report" attached to his affidavit in support of summary judgment which contained the following narrative:

> As we got about 10 rows deep into the filed I observed a white male laying in one of the rows. I could not see the male subject completely due to the rows of corn concealing his body from the neck down. I ordered the subject to show me his hands. The subject did not move. I ordered the subject again to show me his hands or he was going to be bitten by my K-9 partner Zayne. The male again did not move or comply with my orders. I gave Zayne his bite command and Zayne gave a bite on the right forearm area. The male continued to not comply with my orders and tucked his right arm up underneath his

> body. Zayne moved from biting his wrist area up to his bicep area. The male subject continued to not comply with my commands. The male attempted to get up to his knees and I forced him back down to the ground. Cpl. Wrathell came up to take the subject into custody. Cpl. Wrathell got his left hand behind his back. I then took Zayne off the bite and Cpl. Wrathell was able to handcuff his right hand.

[DE 55-1 at 6.]

Long, on the other hand, tells a different version of the events once he was encountered by Officer Ray. He claims in an affidavit that he "surrendered to arrest by the officers by lying on the ground and complying with all orders for arrest that they gave me. I was ordered by officers to show my hands to them, and I showed them my hands. At no time during my encounter with Corporal Ray did I resist arrest from the police. At no time during my encounter with Corporal Ray did I refuse orders from the police." [DE 61-1 ¶¶ 8-11.]

In addition to his own declaration, Long has submitted a video recording of his arrest, presumably created by a camera attached to one of the arresting officers. [DE 63.] Ordinarily, a picture is worth a thousand words. Not so here. The video is largely unhelpful. It was recorded after midnight, in a cornfield illuminated only by flashlights, and without audio. While it depicts the events it does not do so in a way that entirely corroborates either party's version of the encounter. That said, the video makes clear that when Officer Ray and Zayne found Long, Long was lying face down on the ground and it further shows Zayne biting Long. [*Id.*] The video also shows Long plainly showing his hands to Officer Ray but this occurs only after the dog is already biting

him. Whether Long displayed his hands to Officer Ray and fully followed his commands prior to the time the dog was unleashed is not clearly captured in the video.

**Legal Standard**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to material facts exist only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether an such dispute exists, I take "all facts and reasonable inferences from the record in the light most favorable to [] the non-moving party." *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 900 (7th Cir. 2005).

**Discussion**

As stated above, Officer Ray has raised two issues that need to be addressed. First, he claims that summary judgment is appropriate because the use of force was objectively reasonable even if you accept Long's version of the events. Second, Office Ray says he is entitled to qualified immunity. I will take up each issue in turn below.

**A.     Whether Ray's Use of Force Was Objectively Reasonable.**

In order to succeed on a Section 1983 claim, Long must show two elements "(1) the party against whom the claim is brought qualifies as a 'person acting under the color of state law'; and (2) the conduct alleged amounted to a deprivation of rights, privileges, or immunities under the Constitution or the laws of the United States." *Tom Beu Xiong v. Fischer*, 787 F.3d 389, 397 (7th Cir. 2015) (citation omitted). It is plain that

4

Officer Ray was acting under color of law during his encounter with Long so the only issue is whether his actions deprived Long of any constitutional rights.

The Fourth Amendment's protection against unreasonable searches and seizures applies to, and limits, the amount of force that law enforcement may use on an individual. *See Stainback v. Dixon,* 569 F.3d 767, 772 (7th Cir. 2009). "When an officer is accused of using excessive force, the decisive question is whether the officer's conduct meets the Fourth Amendment's objective standard of reasonableness." *United States v. Brown*, 871 F.3d 532, 536 (7th Cir. 2017). "The nature and extent of force that may reasonably be used to effectuate an arrest depends on the specific circumstances of the arrest, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

In addition to the above three factors, "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396. This totality of the circumstances test further requires that I recognize that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397.

5

In making the determination, I am further guided by the fact this is not the first lawsuit—far from it—where an individual has sued law enforcement for excessive force as a result of use of a police K-9. Indeed, the Seventh Circuit has addressed analogous circumstances in recent years in three key cases, which in my view, dictate the outcome of this motion.

First, in *Johnson v. Scott*, 576 F.3d 658 (7th Cir. 2009), the Seventh Circuit affirmed summary judgment in favor of a police officer defendant who ordered a K-9 to bite and further struck the plaintiff. In that case, a suspect (the plaintiff) was actively and recklessly fleeing from police and a nightclub after police received a call concerning a suspected shooting at the nightclub. *Johnson*, 576 F.3d at 659. It was undisputed that at the time of the chase, the plaintiff was flying through stop signs above the speed limit during icy road conditions. *Id.* When the suspect encountered a police roadblock, he stopped his car and fled on foot. During the foot chase, the defendant and his K-9 partner quickly pursued the suspect through a residential yard where the suspect encountered a five-foot-tall wooden fence. "It was at this point that he turned around, put his arms in the air, and said 'I give up.'" *Id.* Importantly, at the moment Johnson offered his about-face surrender, the police officer and his K-9 "were only six to eight feet behind" him. *Id.* Thus the court found that the use of force was objectively reasonable under the circumstances given the serious crimes at issue (a shooting and flight from police), the high probability that Johnson was armed given the nature of the crimes, and finally the fact that Johnson was undoubtedly actively resisting arrest up

until the very last moment. *Id.* at 660. "[I]t could not have been more than one second between Johnson's surrender and the use of force by Scott, given the distance between [them] at the time of surrender." *Id.* This fact was key to the holding in *Johnson*, as there was no time to give any verbal warning or call off the police dog before the force was used.

Second, and on the other hand, in *Alicea v. Thomas*, 815 F.3d 283 (7th Cir. 2016), the Seventh Circuit reversed a grant of summary judgment in a K-9 excessive force lawsuit. There, a burglary suspect was pursued by police until he was tracked by the K-9 and found standing inside of a pool with his hands in his sweatshirt. *Alicea*, 815 F.3d at 286. The parties disagreed as to whether the suspect complied with police orders to show his hands, but it was undisputed that the police dog thereafter bit the suspect causing him injury. *Id.* The court rejected the defendants' argument that the suspect's prior flight alone justified the force used as a matter of law. "The sole fact a suspect has resisted arrest before cannot justify disregarding his surrender in deciding whether and how to use force." *Id.* at 289 (citing *Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014)). Thus, because the suspect was no longer in active flight at the time force was used, and because there were no specific reasons for officers to fear for their safety, the use of force was not objectively reasonable as a matter of law.

Third, in *Becker v. Elfreich*, 821 F.3d 920 (7th Cir. 2016), the Seventh Circuit again reversed a grant of summary judgment in a case in which a suspect was arrested and bitten by a K-9, this time inside the suspect's home. There, the parties disputed whether

or not the officer gave a verbal warning before releasing his dog into the home, as the suspect was descending the stairs to surrender. *Becker*, 821 F.3d at 924. The dog bit the suspect in the leg and the officer did not issue a command to release the dog despite a plea for him to call the dog off. *Id.* The suspect was then wrestled to the ground by the officer down the last few stairs of the staircase. And even after he was wrestled to the ground, the dog continued to bite the suspect to the point where his calf was "torn out completely." *Id.* Again (as is a running theme in these cases it seems), the parties disputed whether or not the suspect complied with police orders to get on the ground, with the officer testifying that the suspect refused and the suspect testifying that he could not hear the officer over the screaming of his girlfriend once the dog started biting him. *Id.* at 927. But in any event, the court reversed summary judgment under these facts primarily because even if the suspect was not complying, "willful non-compliance [is] not the same as 'actively resist' but instead a passive 'resistence requiring the minimal use of force.'" *Id.* (citation omitted).

To me, these cases make clear why summary judgment in favor of Officer Ray on this issue is not warranted. Here, Long was not actively fleeing at the time police encountered him. While it is true he was not turning himself into the police and had previously fled across state lines, the fact remains he was discovered lying face down on the ground by multiple officers. According to Long, he immediately complied with the officers commands, showed his hands and submitted to their authority. Thus, the situation before me is not the same as *Johnson* where the suspect was bitten by the K-9

during textbook "hot pursuit" and could have continued to pose a threat to the arresting officer.

Instead, like the suspect in *Alicea*, Long was being pursued for a suspected burglary. Accepting Long's version of the events, he was entirely compliant with the officers, submitted to their commands and showed them his hands. If this is all true, and again I accept it as such for present purposes, then it is hard to see how such an individual would be posing an active threat to the officers. *See Foutch v. Zimmer*, 2016 WL 879627, at *4 (S.D. Ill. Mar. 8, 2016) ("[I]f Plaintiff was not posing a threat to anyone at the time the [force] was deployed, Defendant's actions could be considered excessive despite Plaintiff's previous actions.") (denying defendants' motion for summary judgment). As the Seventh Circuit stated in *Becker*, "in every arrest there is a possibility that the individual is armed and that does not justify allowing [a dog] to continue to bite [a suspect] while" police officers carry out an arrest. 821 F.3d at 927 (citation omitted).

In sum, it will be up to a jury to decide whether the force used by Officer Long—the release of his K-9—was reasonable under the circumstances. *Catlin v. City of Wheaton*, 574 F.3d 361, 367 (7th Cir. 2009) ("Summary judgment is often inappropriate in excessive forces cases" because "parties typically tell different stories about what happened.").

**B.     Whether Ray's Use of Force Is Entitled to Qualified Immunity.**

Having found that it will be for the jury to decide whether or not Ray's use of force was objectively reasonable under the circumstances, I must now determine whether or not that question may be presented to the jury, or if Ray is entitled to qualified immunity given his status as a law enforcement officer accused of violating constitutional rights.

Qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Firtzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Aschcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). "Whether an official protected by qualified may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (internal citation omitted).

Given that part of the qualified immunity analysis rests on whether or not Ray's actions were objectively reasonable, which I could not answer as a matter of law based upon the record before me, there is overlap with the above analysis in favor of Long. *See*

*Sheehan v. Noble Ct. Sheriff's Dept.*, 2016 WL 7100555, at *13 (N.D. Ind. Dec. 6, 2016) ("The Defendants' argument for qualified immunity is based on the assumption that the force used against [the plaintiff] was reasonable under the circumstances. But since the Court cannot make that assumption, it likewise cannot conclude that Defendants are entitled to qualified immunity. If a jury finds that any of the Defendant officers are liable for excessive force, then by definition they would not be entitled to qualified immunity.").

The events in question in this lawsuit took place in October 2016. At that time, it was clearly established that an officer may not use excessive force against an individual during an arrest. *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 687 (7th Cir. 2007). It was likewise clearly established that "using a significant level of force on a non-resisting or a passively resisting individual constitutes excessive force." *Avina v. Bohlen* 2018 WL 2324105, at *12 (E.D. Wis. May 22, 2018) (quoting *Alicea*, 815 F.3d at 292). More specifically, *Alicea* and *Becker* make clear that use of a K-9 specifically upon a non-resisting or passively resisting individual may constitute excessive force. Therefore, Officer Ray is not entitled to summary judgment on the basis of qualified immunity.

**Conclusion**

For each of the reasons stated in this opinion, Ray's motion for summary judgment is DENIED.

SO ORDERED on October 5, 2018.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT